UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAWN MARIE COSCARELLI,

       Plaintiff,

v.                                                                                          Case No. 1:15-cv-817
                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of May 31, 1996. PageID.216. She identified her disabling conditions as depression, anxiety, and fear of leaving the house. PageID.219. Plaintiff completed the 10th grade, had additional training as a medical assistant, and had past employment as an inspector/packer at a container company. PageID.220. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 9, 2014. PageID.35-47. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she

> is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation.  At the first step, the ALJ found that plaintiff was first insured for benefits on March 1, 2003, and that she engaged in substantial gainful activity from March 2003 through September 2003, but not otherwise since being insured.  PageID.37.   She met the insured status requirements of the Act through March 30, 2012.  *Id*.  At the second step, the ALJ found that plaintiff had severe impairments of anxiety disorder, mood disorder, cannabis abuse, degenerative disc disease (spondylosis and stenosis, cervical spine), and headaches.  PageID.38.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.41.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and delineated here: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can sit 6 hours, and can stand and/or walk 6 hours, in an 8-hour workday; she is limited to performing simple, routine and repetitive tasks.

PageID.42. The ALJ also found that plaintiff could perform her past relevant work as an inspector/packer.  PageID.45.  This past relevant work did not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC).  *Id.*

In the alternative, the ALJ proceeded to step five, where he determined that plaintiff could perform a significant number of unskilled, light exertional jobs in the national economy:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17 and Rule 202.10.  However, the additional limitations have little or no effect on the

  occupational base of unskilled light work.  A finding of "not disabled" is therefore appropriate under the framework of these rules.

PageID.46.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 1, 2003 (the date she was first insured) through April 9, 2014 (the date of the decision).  *Id*.

### III. ANALYSIS

Plaintiff did not include a "Statement of Errors" as directed by the Court.  *See* Notice (docket no. 8).  However, the Court has gleaned three issues from the brief.

  **A.**  **The ALJ's step 3 finding and RFC finding fails to account for Plaintiff's medically determinable and "severe" headaches.**

Plaintiff contends that the ALJ erred by failing to discuss her severe headaches as meeting the requirements of Listing 11.03.  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments."  *Id.*  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d).  A claimant does not satisfy a particular listing unless all of the requirements of the listing are present.  *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987).  "It is insufficient that a claimant comes close to meeting the requirements of a listed impairment."  *Elam ex rel. Golay v. Commissioner of Social*

5

*Security*, 348 F.3d 124, 125 (6th Cir. 2003). "When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

"The disability listings contain over a hundred conditions severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). However, "severe headaches" is not one of them. *See, e.g., McClain v. Commissioner of Social Security*, No. 1:14-CV-159, 2014 WL 5765518 at *5 (S.D. Ohio Nov. 5, 2014) ("migraine headaches are not a listed impairment and therefore the ALJ was not required to consider it at step three").[1]

The gist of plaintiff's argument is that her severe headaches are medically equal to non-convulsive epilepsy in Listing 11.03, which provides as follows:

> *Epilepsy - nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

---

[1] Plaintiff cites "SSA National Q&A 09-036" as stating that Listing 11.03 "is the most analogous to the consideration of headaches." Plaintiff's Brief (docket no. 10, PageID.474). While plaintiff stated that this "Q & A" was attached as Exhibit A, there is no such Exhibit attached to the brief. *Id.*

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.03.

"For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to all criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). Plaintiff did not present any such findings during the administrative proceeding. Rather, in a pre-hearing memorandum, plaintiff did not claim to meet any listed impairment, but urged the ALJ to "employ a non-mechanical application of the medical vocational guidelines" and find her disabled under Rule 201.10 of the guidelines.[2] PageID.244-247. Plaintiff did not raise the issue that her headaches were equivalent to the epilepsy listing until filing this appeal. "[T]he ALJ need not discuss listings that the applicant clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks*, 544 Fed. Appx. at 641. Accordingly, plaintiff's claim of error is denied.

> **B.  The ALJ erroneously rejected the opinion of plaintiff's therapist without carrying out the analysis set forth in the regulations at 20 CFR §404.1527 and in accordance with Sixth Circuit precedent.**

Plaintiff contends that the ALJ did not properly address the opinions of her therapist, Ms. Isaacs, and failed to give good reasons for rejecting the opinions. As a therapist, Ms. Isaacs is not an acceptable medical source under 20 C.F.R. §§ 404.1513(a) and 416.913(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed

---

[2] "When a claimant's functional abilities exactly meet the definition for a category of work, i.e., light work, the Medical-Vocational Guidelines, or 'grids,' allow the ALJ to take notice of the number of jobs available in the national economy." *Templeton v. Commissioner of Social Security*, 215 Fed. Appx. 458, 463 (6th Cir. 2007).

7

optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). As the Sixth Circuit explained:

> Section 404.1513 establishes two categories of medical evidence, "acceptable medical sources" and "other sources." Generally speaking, "acceptable medical sources" are licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a "non-treating (but examining) source," or a "non-examining source." *Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir.2007). "Other sources" is everyone else, including nurse practitioners, physician's assistants, and therapists. 20 C.F.R. § 404.1513(d)(1). More specifically, nurse practitioners, therapists, and the like are "non-acceptable medical sources." *See id.* The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference – the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 397-98 (6th Cir.2014).

*Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015).

Nevertheless, Social Security Ruling (SSR) 06-3p provides that opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06-3p; 20 C.F.R. § 402.35(b)(1) (SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency); *Noto*, 632 Fed. Appx. at 249 ("Social Security Ruling 06-03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source").

   The ALJ addressed plaintiff's mental status and Ms. Isaacs' opinions as follows:

> The claimant does not have a strong employment history. She has not been compliant with treatment directives relative to tobacco and cannabis cessation. The

>claimant asserted having hearing and vision deficits, but the record is devoid of documented maladies in these respects.  With regard to her emotional status, the evidence in the record does not suggest or establish that the claimant lacks suitable concentration, memory, adaptive, basic cognitive or interpersonal skills for vocational involvement that is simple and routine in nature, as depicted in the RFC adopted.  The claimant was not psychiatrically hospitalized, and she reportedly benefitted somewhat from medication and outpatient therapy.  Within testimony or the written record, it was reported that the claimant performed self-care tasks, prepared meals, completed a variety of household chores (she reported being a live-in maid for some of the period at issue), provided care for her boyfriend's young child for some interval, gardened and assisted with landscaping, walked her dog, shopped, attended to financial matters, and spent time with family and a few good friends (Exhibits 4E, 1F and testimony).
>
>     I considered the March 2013 depression and anxiety questionnaires (Exhibits 4F, 5F), and March 2014 letter, completed by Una A Issaacs [sic], LMSW, MA, CAADC.  The social worker and alcohol/drug counselor, checked a number of blocks reflecting extraordinary work functional limitations for the claimant (e.g., claimant's depression markedly compromised her concentration, persistence and pace in competing tasks; claimant had marked (sic) episodes of deterioration or decompensation in a work or work-liked [sic] situation due to depression; claimant's anxiety caused "extreme" difficulties in social functioning, concentration persistence and pace, and episodes of deterioration/decompensation, etc.).  The social worker reported that the claimant had symptoms of guilt, worthlessness, paranoia (reporting she felt she was being spied upon); that she had incidence of flight of ideas, pressured and stuttering speech; that she often closed her eyes when talking, opened them quickly, and scanned the room before closing them again.  The social worker reported that the claimant's behavioral health and "medical conditions" presented a significant impediment to her ability to be gainfully employed . . . . . . I would be hesitant to state that she could execute the most simplest of tasks on a consistent basis, much less take the responsibility of employment (Exhibit 10F).  Of course, clinician Isaacs did not perform an evaluation of the claimant's medical conditions, as she is not qualified to do so.  I find the degree of limitation suggested by the clinician is not well supported objectively, and to overstate the claimant's level of dysfunction, particularly when considering her daily activities, positive response to medication, and the record as a whole.

PageID.43-44.

Plaintiff contends that the ALJ failed to give "good reasons" for rejecting Ms. Isaacs' opinions.  *See* Plaintiff's Brief at PageID.478.  Contrary to plaintiff's suggestion, there is no

requirement that an ALJ give "good reasons" for the weight assigned to the opinion of a non-acceptable medical source, such as a therapist. This articulation requirement is limited to a treating source's opinion. *See Smith*, 482 F.3d at 876. Here, the ALJ considered Ms. Isaacs' opinions as required under the regulations. Accordingly, plaintiff's claim of error will be denied.

> **C. The ALJ's limitation to simple, routine repetitive tasks is impermissibly vague under Sixth Circuit case law and further fails to account for his own finding of a moderate limitation in plaintiff's ability to maintain concentration, persistence and pace.**

Due to her mental impairments, the ALJ limited plaintiff "to performing simple, routine and repetitive tasks." PageID.42. The ALJ did not commit error in assigning this limitation. "Simple, routine and repetitive" is in essence shorthand for the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

As the Sixth Circuit explained in *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000):

> We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work. Indeed, the Social Security Administration regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"

>and gives the examples of "handling, feeding and offbearing" - in other words, simple, repetitive tasks. 20 C.F.R. § 404.1568(a).

*See, e.g., Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (Sixth Circuit determined that a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner).

Finally, plaintiff's claim that the ALJ erred by failing to incorporate his finding that plaintiff had a moderate limitation in her ability to maintain concentration, persistence and pace into the RFC determination is without merit. The finding referred to by plaintiff was made at step three of the sequential evaluation process when the ALJ was required to determine whether plaintiff met the "paragraph B" requirements of listed impairments 12.04, 12.06 and 12.09. PageID.41-42. RFC is a separate determination made at step four of the sequential evaluation. *See Gentry v. Commissioner of Social Security*, 741 F.3d 708, 722 (6th Cir. 2014). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen v. Secretary of Department of Health and Human Services*, 964 F.2d 524, 530 (6th Cir. 1992).

An ALJ's evaluation of whether a claimant meets a listed impairment performed at step three is not an RFC determination. Here, the ALJ explicitly addressed this point, stating "The

limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." PageID.42.  *See* 20 CFR Pt. 404, Subpt. P, App. 1, 12.00.A. ("RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments.  An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder").

As the court explained in *Pinkard v. Commissioner of Social Security Administration*, No. 1:13-cv-1339, 2014 WL 3389206 (N.D. Ohio July 9, 2014):

> Next, Plaintiff argues that the ALJ erred in concluding that Plaintiff had moderate difficulties in concentration, persistence, and pace, while failing to include an appropriate limitation for these difficulties in the RFC findings. . . Plaintiff refers to the ALJ's paragraph B findings in his evaluation of Plaintiff's depression under 12.04 of the listing of impairments []. 20 C.F.R. pt. 404, subpt. P, app. 1 Sections 12.04, 12.05, 12.06. However, the ALJ does not have to include paragraph B finding[s] in his RFC finding. Paragraph B findings under the listings are findings at step three of the sequential evaluation process, and are not RFC findings pertaining to steps four and five of the sequential evaluation process. 20 C.F.R. pt. 404, subpt. P, app. 1, Section 12.00. Hence, the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a "moderate limitation in concentration, persistence, and pace" in his residual functional capacity finding at steps four and five.

*Pinkard*, 2014 WL 3389206 at *10.   The ALJ did not err in failing to include step three "paragraph B" findings in plaintiff's RFC.  Accordingly, plaintiff's claim of error is denied.

## IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 29, 2016         /s/ Ray Kent
                                  RAY KENT
                                  United States Magistrate Judge